# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

In re:

**DONALD BARNETT a/k/a/**                                    **BK: 10-70873**
**DON BARNETT**

        **Debtor.**

**OUTLAND HOMES, INC. d/b/a/**
**DAVID HOWARD DRYWALL**

        **Plaintiff,**

**v.**

**DONALD BARNETT a/k/a**                                    **AP: 10-70023**
**DON BARNETT**

        **Defendant.**

## MEMORANDUM OPINION

This adversary proceeding came before the court on January 27, 2011, for hearing on Plaintiff's Motion for Summary Judgment. (AP Doc. 19). Jason Stoves appeared on behalf of Plaintiff Outland Homes, Inc. d/b/a/ David Howard Drywall ("Movant"); Stephen L. Sexton appeared on behalf of Defendant Donald Barnett a/k/a Don Barnett ("Debtor"). After consideration of the arguments made and the briefs submitted by the parties, this court will **GRANT** the Motion for Summary Judgment as to the $50,000.00 in punitive damages and the $116,165.00 in compensatory damages for the Tallahassee Project.

## JURISDICTION

The Bankruptcy Court has jurisdiction of this case pursuant to 28 U.S.C. § 1334(a). This

1

court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984.

## FINDINGS OF FACT

On or about October 29, 2008, Movant filed suit against Debtor in the Circuit Court of Jefferson County, Alabama, Bessemer Division, Case No. CV-2008-001461, styled *Outland Homes, Inc. d/b/a David Howard Drywall vs. IDP Contracting, L.L.C., Don Barnett d/b/a IDP Contracting, Don Barnett, and Kellog and Kimsey, Inc.* ("the State Court Action"), alleging the following facts: In May 2008, Defendants contacted Movant at Movant's principal place of business in McCalla, Alabama and requested Movant to perform work, including but not limited to the installation of drywall, on a Spring Hill Suites Hotel in Tallahassee, Florida; Movant agreed to perform the requested work in reliance upon Defendants' promises to pay Movant for any and all work and labor performed; Movant commenced work in May of 2008 and completed its operations in July of 2008; The Defendants have not paid Movant for this work; To further induce Movant to do drywall work on the Spring Hill Suites Hotel, in May of 2008, Defendant Barnett contacted Movant; Defendant Barnett promised that he would give Movant the drywall work on "The Bluff Project" in Tuscaloosa, Alabama if Movant would complete the hotel project in Tallahassee; Movant agreed and completed the Tallahassee project; Movant then began working what was known as "The Bluff Project" in Tuscaloosa, Alabama; Movant completed its work on Building One of "The Bluff Project," but was only paid for half of the work completed; Movant was then asked to commence work on Building Two of "The Bluff Project," but was reluctant because money was still owed for the work done on Building One; To induce Movant to do necessary work on Building Two, Defendant Barnett

2

promised Movant that all money would be paid in full if Movant completed the drywall installation in Building Two; In reliance upon Defendant Barnett's representations, Movant finished Building Two in advance of the construction deadline; Movant is still owed $42,048.00 for its work on Buildings One and Two at "The Bluff Project." (AP Doc. 19, Exhibit A to Affidavit of David Howard). The complaint commencing the State Court Action alleged numerous counts against the Debtor, counts for breach of contract, claim on open account, claim on account stated, unjust enrichment, fraudulent misrepresentation and suppression, deceit, and promissory fraud. (AP Doc. 19, Exhibit A to Affidavit of David Howard).

On September 8, 2009, the Final Order was entered in the State Court Action. The Final Order found in favor of the Movant and awarded both compensatory and punitive damages to the Movant. Here are the facts as laid out in the Final Order:

> 1, The dispute presented for this court's determination is how much is the [Debtor] indebted to [Movant] for dry wall installation work [Movant] performed at [Debtor's] insistence. There is no question that [Debtor] offered to compensate [Movant] in exchange for the work; that [Movant] accepted the offer and performed the work for a valuable consideration; and that there were no complaints regarding the quality of [Movant's] work. [Movant] claims the [Debtor] owes him $164,540.92-[Debtor] claims at the most he owes the [Movant] $15,683.00.
>
> 2. During May 2008, the [Debtor] convinced [Movant] to do dry wall work for two projects [Debtor] was the sub-contractor for to provide dry-wall services: a job within the Tallahassee Springhill Suite Tallahassee, Florida Hotel project (hereafter referred to as the "Tallahassee Project") and a job called The Bluff at Water Works Landing (hereafter referred to as the "Tuscaloosa Project").
>
> 3. The parties entered into no written contract. [Movant] claims his dealings were directly with [Debtor] Donald Barnett. [Debtor] claims he had no direct dealings with [Movant] David Howard. However, the Court finds that the two individually named parties had direct contact with each other at least twice before [Movant] left for Florida to perform work on the Tallahassee Project.
>
> 4. The parties first had direct dealings with one another when the [Movant] went to

3

[Debtor's] house after [Movant] received a call from [Movant's] dry-wall finisher, who was completing work on a residential project right next door to [Debtor] Donald Barnett's home, informing him that the [Debtor] was interested in the finisher's boss doing some dry-wall work for him, pursuant to which the [Movant] talked to [Debtor] Barnett over the phone and thereafter went to [Movant's] home and the two had direct discussions with one another in the [Debtor's] driveway.

5. The second time the parties had direct contact with each other prior to [Movant] leaving for the Tallahassee Project was two weeks after the parties' first contact when [Debtor] again called [Movant] who went to the [Debtor's] home where [Debtor] informed [Movant] about problems [Debtor] was having in connection with the Florida project and his immediate need for [Debtor] to commence work on the Tallahassee Project.

6. The [Movant] testified and the Court finds that during the parties' first conversation, they discussed [Movant's] compensation for the dry-wall work and the [Movant] explained his square foot pricing method and the two shook hands in agreement as to those general terms of compensation explained by the [Movant] to the [Debtor] concerning his general pricing methodology and the price he would charge for the Tallahassee project. In so finding the Court rejects the testimony of the [Debtor] regarding the normal "sheet" pricing method and its applicability to the two jobs at hand, and in particular, to the Tuscaloosa job.

7. With nothing more than a handshake and the parties' verbal understanding as to the general terms of their agreement, on or about June 30, 2008 the [Movant] in good faith and in reliance on the [Debtor's] promises, along with his work crews drove to Florida to begin work on the Tallahassee project, which had been delayed due to a sudden storm which caused a lot of the drywall that had been installed prior to [Movant's] arrival to rot because of roof leak, necessitating it being torn down. After waiting for clearance from the Project's insurance company and Kellog & Kimsey, Inc. (the general contractors for the Tallahassee job and formerly a party to this action) specific terms of [Movant's] compensation rate were finalized between [Movant] and [Debtor's] agent, and [Movant's] crew commenced work tearing down the old dry-wall and replacing the same.

8. During the weeks that followed [Movant] submitted invoices to [Debtor's] Manager but was not fully or timely paid. This forced [Movant] to pay his workers out of his own pocket eventually causing [Movant] to cash in his personal Individual Retirement Account to pay his workers. The [Debtor] eventually paid him $37,000 telling [Movant] that he had to wait until he was paid by the general contractor Kellog & Kimsey, Inc. so that he could pay [Movant] the $116,165.00 he owed [Movant].

9. Unbeknownst to the [Movant], [Debtor] had been fully paid by Kellog & Kimsey, Inc. for the Tallahassee Project to the tune of 200,000.00 for the dry-wall portion of the project. [Debtor] neither disclosed this to the [Movant] nor paid [Movant] out of these proceeds.

4

10. Although [Movant] was extremely leery of the [Debtor] due to [Debtor's] faulty payment history, the [Movant], near the end of the Tallahassee Project, was simultaneously performing dry-wall work on [Debtor's] Tuscaloosa Project. In fact, at one point [Movant] stopped work on the Tuscaloosa project due to not being paid by the [Debtor] but resumed work when the Tuscaloosa Project's Manager promised that he'd make sure that [Debtor] Donald Barnett would pay him.

11. Like the Tallahassee Project time was of the essence for the Tuscaloosa Project. The Tuscaloosa Project required no tearing down of rotted dry-wall and the project was completed within thirty (30) days and prior to the agreed upon deadline date.

12. Incredibly, the [Debtor] paid [Movant] nothing to compensate [Movant] for his work on the Tuscaloosa Project. There remained a $92,048.00 unpaid balance on the Tuscaloosa Project. Out of this the Project Manager paid [Movant] $50,000.00 after [Movant] threatened to place a lien on the project. Thus, [Movant] claims $42,048.00 from the [Debtor] for the Tuscaloosa Project.

13. The Court has carefully reviewed [Debtor] Donald Barnett's explanations and reasonings as to why he only owes [Movant] $15,683.00 for the Tuscaloosa job and the Court totally rejects said explanations.

14. The Court finds that the [Movant] is entitled to compensatory damages in the amount of $158,213.00 against the Defendants IDP Contracting, LLC; Donald Barnett doing business as IDP Contracting; and, Donald Barnett individually, plus prejudgment interests and costs.

15. Further, the Court finds that the [Movant] is entitled to punitive damages in the amount of $50,000.00 against the Defendants IDP Contracting, LLC; Donald Barnett doing business as IDP Contracting; and, Donald Barnett individually, on account of their willful failure to pay [Movant] for the Tallahassee Project, deceit and their fraudulent misrepresentation and suppression of facts which [Movant] relied on to his detriment and well being.

(AP Doc. 19, Exhibit B to Affidavit of David Howard). There is nothing in the record calling into question the validity of the Final Order entered in the State Court Action, and there is nothing in the record indicating that such Final Order was appealed or set aside.

The Debtor filed a voluntary petition under Chapter 7 of the bankruptcy code on April 19, 2010. The Movant filed this adversary proceeding on July 22, 2010, seeking a determination that the debt owed to the Movant as a result of the Final Order entered in the State Court Action was

5

nondischargeable pursuant to § 523(a)(2)(A).

## CONCLUSIONS OF LAW

On November 22, 2010, the Movant filed this Motion for Summary Judgment seeking a determination that the Final Order entered in the State Court Action collaterally estops this court from making an independent judgment as to the dischargeability of the debt owed to Movant because such Final Order satisfied all the elements of a § 523(a)(2(A) nondischargeability action.  Based upon this, the Movant asserts that it is entitled to summary judgment.

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, governs the procedures for summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. PRO. 56 (a).   In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).   "The burden of showing the absence of any genuine dispute as to material fact rests on the party seeking summary judgment."  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).  There are no disputes of material fact in this adversary proceeding; the Debtor does not contest any of the facts laid out in the Movant's Motion for Summary Judgment or any of the facts laid out in the Final Order entered in the State Court Action. The court will now determine whether the Movant has shown that the Final Order entered in the State Court Action entitles him to judgment as a matter of law in this adversary proceeding.

Movant seeks summary judgment in this adversary proceeding on the basis of collateral estoppel. The Movant asserts that the Final Order bars this court from litigating whether the Debtor

6

committed fraud as defined by § 523(a)(2)(A) because the Final Order entered in the State Court Action proves that all the issues necessary for a finding of nondischargeability pursuant to § 523(a)(2)(A) were litigated in the State Court Action. Based upon this assertion, the Movant states that it is entitled to judgment as a matter of law on the issue of whether the debt owed to it is nondischargeable pursuant to § 523(a)(2)(A).

"Collateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court." HSSM #7 Ltd. P'ship v. Bilzerian (In re Bilzerian), 100 F. 3d 886, 892 (11th Cir. 1996). "It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court." Id. "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." St. Laurent v. Ambrose (In re St. Laurent), 991 F. 2d 672, 675-76 (11th Cir. 1993). Under Alabama law, the following elements must be present before the doctrine of collateral estoppel applies: (1) the parties in the prior suit must be the same as parties in the present suit; (2) the issues to be litigated in the present suit must be identical to the issues litigated in the prior suit; (3) the issues in the present suit must have been actually litigated in the prior suit; and (4) the issues in the present suit must have been necessary for the resolution of the prior suit. Lott v. Toomey, 477 So. 2d 316, 319 (Ala. 1985). When these elements are present, "the parties are barred from relitigating issues actually litigated in a prior suit." Id.

The first element of collateral estoppel is present in this case: Movant was the Plaintiff in the prior state court action and Debtor was the Defendant in the prior state court action. The parties in this adversary proceeding are the same as the parties in the prior state court action.

This court will next determine whether the second element of collateral estoppel, that the

7

issues to be litigated in this adversary proceeding are identical to those that were litigated in the prior state court action, is present in this case. As laid out above, this adversary proceeding was commenced pursuant to § 523(a)(2)(A). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial conditions;

11 U.S.C. § 523(a)(2)(A). In order to prevail on its § 523(a)(2)(A) cause of action, Movant must prove by a preponderance of the evidence the following elements: (1) the debtor made a false statement; (2) with the purpose and intention of deceiving the creditor; (3) the creditor's reliance on the false statement was justifiably founded; and (4) the creditor sustained damage as a result of the false statement. Fuller v. Johannessen (In re Johannessen), 76 F. 3d 347, 350 (11th Cir. 1996). The Final Order entered in the State Court Action found that Debtor was liable for compensatory damages in the amount of $158,213.00: $116,165.00 for the Tallahassee Project and $42,048.00 for the Tuscaloosa Project.[1] The Final Order also found that Debtor was liable for punitive damages in the amount of $50,000.00 "on account of [his] willful failure to pay [Movant] for the Tallahassee Project, deceit and [his] fraudulent misrepresentation and suppression of facts which [Movant] relied

---

[1]The Final Order entered in the State Court Action awarded $158,213.00 in compensatory damages. In the Final Order, in the discussion relating to the Tallahassee Project, the state court judge stated in paragraph 8 that: "The [Debtor] eventually paid [Movant] $37,000.00 telling [Movant] that he had to wait until he was paid by the general contractor Kellog & Kimsey, Inc. so that he could pay [Movant] the $116,165.00 he owed [Movant]." In the Final Order, the state court judge stated in paragraph 12 that: "Thus, Plaintiff claims $42,048.00 from the Defendant for the Tuscaloosa Project." Because the addition of $42,048.00 to $116,165.00 equals $158,213.00, this court finds that the state court judge awarded the Movant $116,165.00 in compensatory damages for the Tallahassee Project and awarded the Movant $42,048.00 in compensatory damages for the Tuscaloosa Project.

Case 10-70023-CMS    Doc 26    Filed 03/04/11    Entered 03/04/11 14:05:13    Desc Main
Document    Page 8 of 14

on to his detriment and well being."

Alabama law provides: "Punitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. . . ." ALA. CODE § 6-11-20(a) (1975).  The language of the paragraph finding the Debtor liable for punitive damages makes it clear that Debtor was liable for punitive damages because he perpetrated a fraud on the Movant, specifically fraudulent misrepresentation and fraudulent suppression of facts.  Section 6-11-20(b)(1) defines fraud, for purposes of section 6-11-20(b), as:

> An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury.

ALA. CODE § 6-11-20(b) (1975).  In order to find that Movant was entitled to punitive damages in the Final Order, the state court judge had to find that the Debtor's conduct met the preceding definition of fraud.  The preceding definition of fraud satisfies the following elements of § 523(a)(2)(A): (1) a false statement was made (2) with the purpose and intent of deceiving.  That leaves the question of whether the other elements § 523(a)(2)(A) were necessary to the finding of liability for fraud, specifically the finding of fraudulent misrepresentation and fraudulent suppression of facts.  The third element that must be proved in a § 523(a)(2)(A) is that the false statement was justifiably relied upon.  Alabama law requires a finding of reliance in a cause of action alleging fraudulent misrepresentation as well as a cause of action alleging fraudulent suppression.  See, e.g., Davis v. Sterne, Agee and Leach, Inc., 965 So. 2d 1076, 1091-92 (Ala. 2007) ("However, the 'misrepresentation or suppression of the existing material fact must have led the plaintiff to act to

9

his detriment in reasonable reliance thereon'") (quoting <u>Crowder v. Memory Hill Gardens, Inc.</u>, 516 So. 2d 602, 605 (Ala. 1987)); <u>Alfa Mutual Ins. Co. V. Northington</u>, 561 So. 2d 1041,1045 (Ala. 1990).[2] Therefore, the third element of § 523(a)(2)(A) is met by the Final Order. The fourth and final element required to find a debt nondischargable pursuant to § 523(a)(2)(A) is that the party who relied on the false statement was injured as a result of the false statement. The fact that the state court awarded Movant compensatory damages as a result of the same conduct that led that the state court to award the Movant punitive damages proves that the state court judge found Movant suffered an injury as the result of the Debtor's fraudulent misrepresentation and fraudulent suppression. In addition, the Final Order found that the Movant relied on the Debtor's fraudulent misrepresentation and suppression of facts "to his detriment and well being," proving that Movant was injured by the Debtor's fraudulent misrepresentation and suppression of facts.

Note that the preceding discussion is limited to the discussion of the punitive damages awarded by the Final Order in the State Court Action. This court has limited its legal analysis to the award of punitive damages because it was only in the award of punitive damages that the state court specified the grounds for the awardance; the award of compensatory damages does not indicate the basis upon which the court granted compensatory damages. Therefore, the issues litigated which led

---

[2]There is some confusion over whether Alabama law requires reasonable reliance or justifiable reliance in causes of action alleging fraud. <u>See</u> <u>Alfa Mutual Ins. Co. v. Northington</u>, 561 So. 2d 1041,1045 (Ala. 1990). In a cause of action brought pursuant to § 523(a)(2)(A), a creditor must show justifiable reliance on a debtor's misrepresentations. <u>Field v. Mans</u>, 516 U.S. 59, 77, 116 S. Ct. 437, 447 (1995); <u>City Bank & Trust Co. v. Vann (In re Vann)</u>, 67 F. 3d 277, 280 (11th Cir. 1995). Because reasonable reliance is a more stringent standard than justifiable reliance, this court concludes that a determination of reasonable reliance or justifiable reliance pursuant to Alabama law satisfies the justifiable reliance element of § 523(a)(2)(A). <u>In re Vann</u>, 67 F. 3d at 280 ("[W]e conclude the requirement of reasonableness to be a more stringent standard than justifiable reliance or actual reliance.").

10

to the determination that Movant was entitled to punitive damages are identical to the issues that would need to be litigated in this adversary proceeding to determine whether the debt owed to Movant is nondischargeable pursuant to § 523(a)(2)(A). This leaves the question of whether the litigated issues that led to the determination that Movant was entitled to compensatory damages are also identical to the issues raised in this adversary proceeding. This court finds that only the compensatory damages awarded for the Tallahassee Project meet this criteria.

In In re St. Laurent, the Eleventh Circuit Court of Appeals held that "punitive damage awards flowing from the same course of fraudulent conduct necessitating an award of compensatory damages are not dischargeable in bankruptcy under § 523(a)(2)(A)." 991 F. 2d at 678. This court holds that the reverse is also true: that compensatory damage awards flowing from the same fraudulent conduct necessitating an award of punitive damages are not dischargeable in bankruptcy under § 523(a)(2)(A). Based upon the language of the punitive damages award, this court concludes that only the compensatory damages awarded for the Tallahassee Project meet this test. The Final Order entered in the State Court Action provides that the Movant was awarded punitive damages due to Debtor's "willful failure to pay [Movant] for **the Tallahassee Project**, deceit and . . . fraudulent misrepresentation and suppression of facts which [Movant] relied on to his detriment and well being." (AP Doc. 19, Exhibit B to Affidavit of David Howard) (emphasis added). This provision could be read two ways: First, it could be read to mean that Movant was awarded punitive damages for the willful failure of Debtor pay for the Tallahassee Project and for deceit and fraudulent misrepresentation and suppression of facts relating to the Tallahassee Project. Second, it could be read to mean that Movant was awarded punitive damages for the willful failure of Debtor to pay for the Tallahassee Project and for deceit and fraudulent misrepresentation and suppression of facts

Case 10-70023-CMS    Doc 26    Filed 03/04/11    Entered 03/04/11 14:05:13    Desc Main
Document      Page 11 of 14

relating to both the Tallahassee Project and the Tuscaloosa Project, in other words the entire chain of events. The state court judgment clearly and unmistakably awarded punitive damages for the Debtor's conduct regarding the Tallahassee Project, but did not clearly award punitive damages for the conduct surrounding the Tuscaloosa Project.. As such, this court finds, for purposes of this Motion for Summary Judgment, that the compensatory damages awarded for the Debtor's conduct on the Tallahassee Project flow from the same fraudulent conduct necessitating an award of punitive damages while the compensatory damages awarded for the Debtor's conduct on the Tuscaloosa Project do not flow from the same fraudulent conduct necessitating an award of punitive damages. Therefore, only the compensatory damages relating to the Tallahassee Project involve the litigation of issues that are identical to the issues that would be litigated in this adversary proceeding to determine whether Movant is entitled to a nondischargeability judgment pursuant to § 523(a)(2)(A). Only the punitive damages award and the compensatory damages award for the Tallahassee Project meet the second element of collateral estoppel.

The third element of collateral estoppel is also present in this case: The issues to be litigated in this adversary proceeding were actually litigated in the prior state court action. The state court tried each element necessary for a determination of fraud, each being fully and actually litigated.

The fourth and final element of collateral estoppel is also present in this case: The issues in this adversary proceeding were necessary for the resolution of the prior state court action. The state court based its punitive damages upon its finding of fraud.[3] In other words, without an independent

---

[3]Under Alabama law, a court may award punitive damages if it finds, by clear and convincing evidence that the defendant engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. ALA. CODE § 6-11-20(a) (1975). The order entered by the state court judge found that Debtor was liable for punitive damages in the amount of $50,000.00 "on account of [his] willful failure to pay [Movant] for the Tallahassee Project, deceit and their

finding of fraud, the state court judge could not have awarded punitive damages to the Movant.  See

ALA. CODE § 6-11-20(a) (1975).  Therefore, the state court's determination that Debtor defrauded

the Movant was necessary and critical its award of punitive damages.  As such, the fourth and final

element of collateral estoppel has been met.[4]

The Movant has proven that all the elements of collateral estoppel are present in this case.

Therefore, the Final Order is entitled to preclusive effect in this adversary proceeding and the

Movant is entitled to judgment as a matter of law on the cause of action brought in this adversary

proceeding pursuant to § 523(a)(2)(A).  As discussed in detail above, this finding only applies to the

compensatory damages award for the Tallahassee Project and the punitive damages award.  The

Final Order in the State Court Action awarded Movant $116,165.00 as compensatory damages for

the Tallahassee Project and $50,000.00 as punitive damages.  As a result, the Movant is entitled to

_____

fraudulent misrepresentation and suppression of facts which [Movant] relied on to his detriment
and well being."  The language utilized by the state court judge indicates that he is awarding
punitive damages due to the fraud perpetuated by the Debtor upon the Movant.

[4]A common requirement for the application of collateral estoppel is that the standard of
proof in the prior cause of action is at least as stringent as that employed in the current cause of
action.  In re St. Laurent, 991 F. 2d at 677.  It is not clear whether this is a requirement under
Alabama law as none of the cases submitted by the parties listed this as a requirement.  However,
this court will note that the state court judge had to find that there was clear and convincing
evidence of fraud before he could award punitive damages to the Movant under Alabama law.
See ALA. CODE § 6-11-20(a) (1975).  The code section allowing for the award of punitive
damages under certain circumstances provides that clear and convincing evidence is: "Evidence
that, when weighed against opposition, will produce in the mind of the trier of fact a firm
conviction as to each essential element of the claim and a high probability as to the correctness of
the conclusion.  Proof by clear and convincing evidence requires a level of proof greater than a
preponderance of the evidence or the substantial weight of the evidence, but less than beyond a
reasonable doubt."  ALA. CODE § 6-11-20(b)(4) (1975).  In a dischargeability proceeding, the
plaintiff must prove by a preponderance of the evidence that he is entitled to a finding that his
debt is nondischargeable.  Therefore, the standard of proof in the prior state court action was
greater, i.e. at least as stringent, as that in this adversary proceeding.  If this is an element of
collateral estoppel under Alabama law, it too has been satisfied.

13

a determination that $166,165.00, together with interest to date, be held nondischargeable pursuant to § 523(a)(2)(A). The Movant will have to prove at trial that the remaining compensatory damages, the $42,048.00 awarded for the Tuscaloosa Project, is also nondischargeable pursuant to § 523(a)(2)(A).

## CONCLUSION

The court finds that the order entered by the state court is entitled to preclusive effect in this adversary proceeding. The court further finds that the Movant has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law as to the cause of action brought pursuant to § 523(a)(2)(A) as to the $50,000.00 in punitive damages and the $116,165.00 in compensatory damages for the Tallahassee Project. Therefore, this court will **GRANT** the Motion for Summary Judgment as to the $50,000.00 in punitive damages and the $116,165.00 in compensatory damages for the Tallahassee Project.

An Order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this March 4, 2011.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge

14